Good morning, Your Honors, may it please the Court. My name is Malaika Eaton and I am the appointed pro bono counsel for the petitioner in this case, Ricardo Miranda-Rosales. I'd like to reserve three minutes of my time for rebuttal. Mr. Miranda-Rosales has asked this Court to hold that the government failed to clearly and unequivocally establish that when Mr. Miranda-Rosales pled guilty to violating California Penal Code Section 451D, he pled guilty to the elements of a Federal crime of violence. In this regard, Mr. Miranda-Rosales established in his opening brief that CPC Section 451D is overly broad in numerous respects when compared to the Federal definition of a crime of violence, which requires the intentional use of force against the person or property of another, with a substantial risk that the intentional use of force against the person or property of another would be required in the course of committing the crime. Are you going to address jurisdiction? Yes, I will, Your Honor. And, in fact, I can jump to that now if you like. Well, it usually comes at the beginning. I just wanted to, because it actually relates to the jurisdictional arguments, I wanted to give a little sense of what Mr. Miranda-Rosales is claiming here. And it relates to the exhaustion issue directly. And if the Court would like, I can proceed to that now. The government has rested its argument here on exhaustion and a related argument for remand. And with regard to exhaustion, the government claims that Mr. Miranda-Rosales did not raise these claims before the agency. And in that regard, it's critical to look at what Mr. Miranda-Rosales argued before the agency. He argued both that the statute was overly broad when compared to the Federal definition of crime of violence, and he argued that the documents submitted by the government did not establish that he had pled guilty to a crime of violence. Those are the same claims he raises now. And when you look at this Court's standard for exhaustion, that's all that's required. So, for example, under this Court's case, Zong, the Petitioner before this Court sought relief under the convention against torture. The government opposed on exhaustion grounds. And this Court held that all that was required for exhaustion was that the Petitioner mentioned before the agency that he was seeking reversal of the IJ's determination on that CAT claim. Mr. Miranda-Rosales has met that standard here. Now, what the government has proposed is a different standard, that Mr. Miranda-Rosales be required to raise the same arguments in support of his claim before the agency. And quite frankly he might be right for the wrong reason, in other words. Exactly. That really he does need to raise exactly the same arguments in support of why his conviction does not qualify before the agency. And otherwise, this Court simply lacks jurisdiction. And that's not the standard in this circuit. This circuit has addressed very similar claims by the government and rejected them. So, for example, a great case on this subject is Argonne-Ion. In that case, the Petitioner came before this Court, again seeking a determination that his crime did not qualify as an aggravated felony, the same issue that Mr. Miranda-Rosales is seeking to raise. However, in arguing before this Court, he raised a different issue of statutory interpretation as to why his crime didn't qualify. The government opposed on exhaustion grounds, and this Court held that the claim was exhausted, even though there was a different argument in support of the claim, because the BIA had the opportunity to determine that his crime qualified as a crime of violence. It held that it had. And so this Court then has jurisdiction to consider whether or not the BIA was right in its reading of the statute. And it's notable here that the government has moved to dismiss this case before the motions panel on exhaustion grounds, and Mr. Miranda-Rosales opposed, and in so doing, we gave a preview of our argument on exhaustion. And it's notable that the government has not responded to these cases. Cruz-Navarro is another case where this Court looked at the Petitioner's argument and held that despite the fact that the issues were argued in a different manner below before the agency, nonetheless, the claim was exhausted. So I think these cases make clear that this Court really does draw a distinction between the issues and claims that the Petitioner is trying to raise. In other words, does this statute qualify as a crime of violence? And if it does not, did the government unequivocally establish that the Petitioner pled guilty versus the particular arguments that the Petitioner raises? I think one of the things that it would be difficult to deal with the type of standard the government proposes by this Court, because every time a law changes, you're going to have to make a slightly different argument. And in this case, the government standard would boot immigration Petitioners out of this Court on jurisdictional grounds and essentially not allow the Court to consider and apply currently existing law. Will you address remand? Yes, I will, Your Honor. The remand issues in this case really boil down to two cases, Ventura and Fernandez-Ruiz. And we submit that Ventura does not apply here. And in fact, this Court under similar circumstances has held that Ventura simply does not apply to cases like this. And when I say cases like this, you take a look at the factors on which the Ventura Court relied to require remand versus the factors on which Fernandez-Ruiz relied to say that remand is not required. And this case lines up precisely with Fernandez-Ruiz. So for example, this is an issue of law. This Court reviews that issue de novo. This is not an issue over which the agency has any discretion, nor is it an issue over which the agency has any special expertise, as the government here has conceded. Unlike Ventura, where the Court was addressing country conditions, current country conditions, the evidence in this case that the government would have been permitted to rely on does not accumulate over time. The record of conviction documents are all established at or near the time the person is convicted. In this case, that was in early 2005. So the agency, to the extent it was able to obtain any documents from the record of conviction, that evidence was available to the agency at the time. And the agency had the obligation to find that evidence and put any evidence in that it thought it needed to. Well, any evidence that it thought it needed to at that time. Correct. But as you indicated a few minutes ago about exhaustion, sometimes the legal landscape shifts. Wouldn't it be appropriate to send it back so that the government can respond to the current legal landscape? In this case, no. Why not? And that's for several reasons. First of all, with respect to aiding and abetting liability, the landscape changed against Mr. Miranda Rosales. So to the extent that the government is trying to claim that it had no idea it needed to put on that proof, at the time, it did need to put on that proof. So if anything, the state of the law has gotten better. And with respect to the law, if you look at the language of CPC Section 451d, in certain respects, it is overbroad. It was then, and it still is now. So it hasn't changed. So, for example, CPC Section 451d would allow a person to be convicted for burning their own property. Yeah, but is that merely what Duane Azalvarez would call a theoretical possibility? Do you have any evidence or anything to indicate that California actually charges somebody with this offense for burning down their own property? Yes, we do, Your Honor. And we've actually cited a case, LT, when it talks about unowned property, property of another, abandoned property, which would not qualify. Well, that wouldn't be somebody's own property. Pardon me? You said you offered it hypothetical. Somebody could be charged for burning down their own property. LT, you just described as not his own property, but somebody else's property. LT was what the Court considered abandoned property, not property of another. Morally, as a case, where the person is. Abandoned property isn't property of that defendant. True. It belongs to somebody else, not that defendant. So I don't think that cites kind of support in your proposition that you can be charged for burning down your own property. I think morally does. And morally looked at a situation where the defendant had burned his own property. And I hope I'm right in naming this case, but we certainly do cite it in our briefs. Morally would charge somebody with burning their own property, concluded it was a violation of this California arson law, and looked at the intent to defraud element and said, even if the property wasn't insured, even if there was no insurance, as long as the State can show that you intended to defraud when you burned your own property, that is sufficient. Do you want to save time for rebuttal? I do, Your Honor. And if I may, I will sit down. Thank you, Your Honor. Good morning. May it please the Court. My name is Manning Evans. I represent the government in this matter. Regarding exhaustion, the government's position on this issue is whether or not the agency was given notice and the opportunity that it's entitled to under the exhaustion statute to correct any errors that the alien may present to this Court thereafter. Now, regarding notice in this case, I would ask the Court to look at pages 9, 12, and 15 of the administrative record. And on those pages, the petitioner refers to the aggravated felony portion of the statute. Now, when the agency is reading the brief to the Board and it reads that language, it's going to say, well, what portion is not the aggravated felony portion? Only portion identified in the brief to the Board as a non-aggravated felony portion is the aiding and abetting liability. Now, under those circumstances, you simply can't say that the agency had notice of the issues that the alien is now trying to present to this Court. Now, the government's brief also writes a subsection. Well, does our case law require notice of a particular formulation or particular issue? I mean, our case law seems pretty lenient from a petitioner's perspective. I agree with that, Your Honor, although I'm not sure that the case law actually spells out what context has been created before the agency in each of these cases. And context is crucial. But in the end, as a matter of law, the agency needs to meet the statutory definition in order to invoke this conviction. So that's a question of law. He says, my crime doesn't match. And now, it may be for one reason or eight reasons. But since it's a foundation to your jurisdiction to even take the action you've taken, why isn't that sufficient notice? Well, Your Honor, in this case, the alien had admitted the crime that they were charged with. Correct. It presented one specific issue as to why that crime did not constitute a crime of violence. And the agency had, meantime, a board decision, Palacios, that said that arson was a crime of violence. This Court's jurisprudence at the time indicated that recklessness was an adequate mental state for crimes of violence. Under those circumstances, you really have to say, well, how closely does the agency have to examine all of the issues that might be raised in a case where the alien is only raising one specific issue regarding removability? And that's the aiding and abetting issue. That is the only issue that the alien presented to the board and to the immigration judge. But what about in the Kaganovich case? Basically, it was a heading, and the person said that the question was whether the conviction constituted a crime of violence, which is almost parallel to the situation here. And that was enough, period. Well, Your Honor, I'm not sure that that court sufficiently or that decision sufficiently acknowledges what the context was before the agency at the time. I can't believe, and I don't think the cases say that there's a need for that. Well, I don't – we have to take it at face value. I understand that, Your Honor. But the cases don't say that a talismanic reference to the issue is enough to exhaust. The cases still say that notice and opportunity to the agency to correct its errors is necessary to exhaust. All of the cases say that. It's just a question of how closely they look at what happened before the agency before they conclude that exhaustion had been met. And in this case, if you look at the agency proceedings, there are ample reasons to think that the agency did not have notice of any of the issues that the Petitioner is now trying to raise for the first time in a replacement opening brief after the agent – after the aliens' arguments raised before the agency were all rejected by the Supreme Court in the Duanez-Alvarez case. Well, doesn't the language that the IJU said, under any analytical mode, he qualifies? Doesn't that suggest that the agency was looking at the broad picture? What else does under any analytical mode signify? Well, Your Honor, I believe that it does refer to both the categorical approach and the modified categorical approach. But the question is, how closely does the agency have to look at those issues in light of standing Ninth Circuit precedent that says that recklessness is adequate? Now, granted, the courts reversed that at this point, but at the time, that was the law, arguably. Palacios had indicated that arson was a crime of violence. And the alien is only raising one issue, and that's the aiding and abetting liability. So that's the government's position regarding whether or not the immigration judge's reference to both categorical approaches was enough to exhaust the question. The alien refers to a couple of exceptions – I'm sorry, the Petitioner refers to a couple of exceptions to the exhaustion requirement, futility, and a change in the law. And I would just point out that the arguments that the alien is raising before this Court are arguments that the alien could have raised at any time in the proceedings before the agency's plea account had come out. The Third Circuit's decision in Tran had come out. Laurie Kizara's had been decided by this Court. Those are all decisions that indicate that the alien could have raised the issues that the alien is now trying to raise. The alien didn't raise them. And that's not an issue or a question of futility. It's not a question of a change in the law that should excuse the exhaustion requirement. For all of those reasons, the government's position here is that the alien failed to exhaust. Regarding remand, the government's brief explains why the Board should be given an opportunity to further analyze the issues. But there's another agency here that also needs to be considered by the Court, and that's the Department of Homeland Security. It's a separate agency. They're the ones charged with prosecuting the removability of this case. And the Court has at times denied a remand where it would be unfair to the alien to give the government another bite of the apple. And a good example of that is the Ruiz-Vidal case, and that's at 473 Fedler 1072. And in that case, the government had been told by the immigration judge, you need to get the conviction documents that show the kind of controlled substance that was involved in this case. The government didn't do that. That's a case where it's reasonable to say, Department of Homeland Security, you had your chance to prove the charges. We're not going to send it back again. That is not what happened in this case. In this case, the government came forward with the conviction documents that it had at the time in a situation where the alien had admitted the crimes and raised only one issue, the question of aiding and abetting liability. In this situation, it would be unfair to the Department of Homeland Security to deny it an opportunity to develop the record further. And regarding whether or not further conviction documents are available, I don't know if they are. But I think that the Department of Homeland Security should be given an opportunity to see if they're available. Kennedy. Well, since you recognize the agency recognized that this is a case involving the modified categorical approach or the categorical approach, whichever, wasn't it incumbent on them to come forward with all of the conviction documents and not hold back on some and come forward with others? Your Honor, if the government could rely on the categorical approach, arguably there's no need to come forward with any documents at all, so long as the alien is admitting the conviction. I'd also say that the government has an opportunity in agency proceedings, and I'd refer the Court to 8 CFR 1003.30, allows the government to amend the charges against the alien any time during immigration proceedings. That means that as the case develops, the government may actually change the charges against the alien. In this case, the government would have no reason to do that, because the alien is admitting the convictions and he's raising only one argument as to why it's not an aggravated felony. And that's an argument that the alien eventually lost in Duane E. Alvarez. I'd simply add that the government argued that it was under the categorical approach that it qualified. I don't believe that the government specifically analyzed why this was a case. And when I say the government, I mean the Department of Homeland Security. I don't believe that the trial attorney specifically put forward the theory that they believed made it an aggravated felony. But you don't dispute that you can't use an abstract, and that then you're left in this case with just an information, correct? Well, Your Honor, that's not even an issue that we believe is exhausted in this case. The only challenge to the documents before the agency was the fact that they would not be able to prove aiding and abetting liability, or the fact that the alien had acted as a principal was the only issue raised. Regarding the availability of additional documents, I'd simply say that transcripts of pleas are frequently not transcribed. And I'm sure that the Court has ample familiarity with that fact. They're not transcribed until somebody needs them at a later date. And I think that that's at least one possible form of evidence that could be offered on remand. In sum, the government would ask the courts to dismiss the petition for review for lack of jurisdiction, and turn it over to the remand matter to the immigration attorney. Thank you. Thank you, Your Honors. I do have a few points I want to address. And Judge Clifton, it is morally. And first of all, I think the premise we have to begin with, it is always the agency's burden to demonstrate that a conviction qualifies. It remains the agency's burden. In this case, notice and opportunity to address under this Court's case law, it's notice and opportunity to address the broad issue. And in this case, that issue is whether or not this particular statute qualifies as a crime of violence. Mr. Miranda-Rosales gave the agency that notice. The I.J. in this case also addressed the mens rea issue. He did not limit himself to aiding and abetting, contrary to what the government has said. He specifically found that this crime was not accomplished as a matter of negligence. That addresses the mens rea issue. It addresses more than aiding and abetting liability, and it shows that the I.J. considered more. The BIA then streamlined this case and adopted the I.J.'s decision as its own. As to the futility issue, it's notable that the government referenced the BIA's case from 1998, a en banc case from the BIA. And I see I have very little time remaining, so I'll just finish this thought, if I may. And in that case, it was notable that the BIA rejected all of the similar arguments and held that arson crime was a crime of violence, despite the fact that the Petitioner burned down his own couch and his own property in a misguided suicide attempt that recklessly risked the lives of others. So the BIA, we think our futility argument has merit in this case, if the court chooses to reach an exception to the exhaustion doctrine. Thank you. Thank you. Thank you both for your argument this morning. The case of Miranda-Rosales v. McKaysey is submitted.
judges: McKeown, Clifton, Schwarzer